IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JORGE ROCHA MANZANAREZ, | ) | Civ. No. 13-00354 SOM/BMK |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS |
| vs. | ) | |
| | ) | |
| ERIC HOLDER, United States | ) | |
| Attorney General; MICHAEL | ) | |
| SAMANIEGO, District Director, | ) | |
| Investigations and Customs | ) | |
| Enforcement; DAVID SHINN, | ) | |
| Warden, Honolulu Federal | ) | |
| Detention Center | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

I.       **BACKGROUND**

Before this court is a habeas corpus Petition filed by
Petitioner Jorge Rocha Manzanarez, asserting that his detention
without bond by United States Immigration and Customs Enforcement
("ICE") "violates inter alia, his due process rights under the
Fifth Amendment of the Constitution of the United States."
Petition at 4, ECF No. 1.  This court denies the Petition.

On April 10, 2013, Manzanarez was arrested by ICE for
having allegedly entered the United States without authorization.
Petition at 2, ECF No. 1.  Under 8 U.S.C. § 1226(a), enacted as
part of the Illegal Immigration and Immigrant Responsibility Act
of 1996 ("IIRIRA"), the federal government may arrest and detain
aliens pending a decision regarding their removability.  Under

§ 1226(a), the government "may continue to detain the arrested alien, . . . [or] release the alien on a bond of at least $1,500 . . . or conditional parole."  8 U.S.C. § 1226(a).  It appears that an initial determination was made to detain Manazanarez and that he sought a redetermination by an immigration judge ("IJ"), pursuant to  8 C.F.R. § 1236.1 (d)(1).

Bond redetermination hearings occurred on April 23, 2013, and May 14, 2013.  Petition at 4, ECF No. 1.  The IJ noted that Manzanarez was not a "criminal alien" within the meaning of 8 U.S.C. § 1226(c) and therefore was not statutorily ineligible for bond.[1]  ECF No. 6-1.  The IJ noted that under the regulations "the Respondent has the burden of showing to the [judge that] (1)

---

[1] "Mandatory detention under Section 1226(c) applies to aliens who are inadmissible on account of having committed a crime involving moral turpitude or a controlled substance offense, on account of having multiple criminal convictions with an aggregate sentence of five years or more of confinement, on account of connections to drug trafficking, prostitution, money laundering, or human trafficking, on account of having carried out severe violations of religious freedom while serving as a foreign government official, or on account of having been involved in serious criminal activity and asserting immunity from prosecution; aliens who are deportable on account of having been convicted of two or more crimes involving moral turpitude, an aggravated felony, a controlled substance offense, certain firearm-related offenses, or certain other miscellaneous crimes; aliens who are deportable on account of having committed a crime of moral turpitude within a certain amount of time since their date of admission for which a sentence of one year or longer has been imposed; and aliens who are inadmissible or deportable because of connections to terrorism. *See* 8 U.S.C. § 1226(c) (cross-referencing 8 U.S.C. §§ 1182(a)(2), 1227(a)(2)(A)(ii), 1227(a)(2)(A)(iii), 1227(a)(2)(B), 1227(a)(2)(C), 1227(a)(2)(D), 1227(a)(2)(A)(i), 1182(a)(3)(B), 1227(a)(4)(B))."  Rodriguez v. Robbins, 715 F.3d 1127, 1132 (9th Cir. 2013).

he is not a danger to the community and (2) he is not a flight risk." Id.  The IJ weighed nine factors set out in Matter of Guerra, 24 I. & N. Dec. 37, 38-40 (BIA 2006).  Id.  Relying principally on three convictions Manzanarez had accrued for driving under the influence of alcohol in 1995, 2000, and 2012, the IJ denied bond, finding that Manzanarez had failed to meet his burden of showing that he was not a danger to the community, even while acknowledging Manzanarez's stable employment history, 19 years of residence in the United States and two children who are United States citizens.  Id. at 3.

Manzanarez timely appealed to the Board of Immigration Appeals ("BIA").  On July 9, 2013, the BIA, upon de novo review, "agree[d] with the Immigration Judge that the record support[ed] a conclusion that the respondent did not carry his burden of proving that he is not a danger to the community."  ECF No. 6-2. As a result, Manzanarez was denied bond and continues to be detained at the Federal Detention Center in Honolulu.  Petition at 4, ECF No. 1.  Manzanarez has been deemed removable by ICE, and his application for cancellation of removal has been denied by an IJ.  Petition at 9, ECF No. 1.  Manzanarez's appeal from the IJ's removal decision is pending before the BIA.  Id.  In the meantime, he seeks release on bond.

## II.        JURISDICTION

This court has jurisdiction under 28 U.S.C. § 2241 to address "questions of law in habeas corpus proceedings brought by aliens challenging Executive interpretations of the immigration laws." INS v. St. Cyr, 533 U.S. 289, 306-07 (2001).

While 8 U.S.C. § 1226(e) strips federal courts of jurisdiction over detention matters committed to the "Attorney General's discretionary judgment," such as the weighing of facts and the credibility of witnesses in a bond hearing, the Ninth Circuit has been clear that "it does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011); see also Demore v. Kim, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").

## III.       LEGAL STANDARD

An alien is entitled to a writ of habeas corpus if he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "When the BIA conducts a de novo review of the IJ's decision, rather than adopting the IJ's decision as its own, we review the BIA's decision." Kankamalage v. I.N.S., 335 F.3d 858, 861 (9th Cir.

4

2003).  "We review de novo the BIA's determination of purely legal questions regarding the [immigration laws], giving deference to the BIA's interpretation unless that interpretation is contrary to the plain and sensible meaning of the statute." Simeonov v. Ashcroft, 371 F.3d 532, 535 (9th Cir. 2004). However, "[i]n deciding whether agency procedures comport with due process, we do not defer to the agency."  Ramirez-Alejandre v. Ashcroft, 320 F.3d 858, 869 (9th Cir. 2003).

IV.      **ANALYSIS**

In Manzanarez's initial petition he argues that his due process rights under the Fifth Amendment were violated by the refusal to release him.  Manzanarez agrees with the IJ that a bond determination turns on the factors articulated in the BIA's decision in Guerra.  Petition at 6-7, ECF No. 1.  However, Manzanarez contends that he "satisfies [these] factors in favor of a bond" and is therefore entitled to be released.  Id. at 8. Although denominated by Manzanarez as a constitutional challenge, this argument actually asks the court to weigh the Guerra factors.  Manzanarez "does not contend that he was prevented from presenting his case before the immigration judge or the BIA, denied a full and fair hearing before an impartial adjudicator or otherwise denied a basic due process right."  Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001).

Instead, Manzanarez's claims relate to perceived inadequacies in the IJ's weighing of evidence, matters committed solely to the executive's discretionary judgment.[2]  "Although we retain jurisdiction to review due process challenges, a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb."  Id.  The claims in Manzanarez's petition plainly fall within those committed to the discretion of the executive, which this court lacks jurisdiction to review.

In his reply brief, Manzanarez contends for the first time that the IJ and BIA erred by placing the burden on him to demonstrate that he is not dangerous, when, in fact, it is "the government's burden to prove that the petitioner is a danger to the community."  Petitioner's Reply at 13, ECF No. 7.  For this proposition, Manzanarez cites exclusively to cases involving _prolonged_ detention, during which an alien is entitled to a

---

[2]  Manzanarez does not even contend that the IJ failed to take the Guerra factors into account, or that he found factors outside of the Guerra analysis to be dispositive, actions that could arguably give rise to due process violations.  See, e.g., Dela Cruz v. Napolitano, 764 F. Supp. 2d 1197, 1200 (S.D. Cal. 2011) ("Petitioner has stated at least a colorable claim that his constitutional right to due process was violated by the IJ's alleged improper exercise of discretion in considering certain factors not explicitly set forth in Guerra at the bond hearing.").  Instead, all the challenges Manzanarez brings in his initial petition go to the _weighing_ of the Guerra factors.  If this court were to subject the IJ's weighing of evidence to review, it would make a nullity of the jurisdictional restrictions Congress enacted.

hearing based on the Ninth Circuit's holding in Casas-Castrillon
v. Department of Homeland Security., 535 F.3d 942, 951 (9th Cir.
2008).  In Casas, the Ninth Circuit held that "[b]ecause the
prolonged detention of an alien without an individualized
determination of his dangerousness or flight risk would be
constitutionally doubtful . . . § 1226(a) must be construed as
requiring the Attorney General to provide the alien with [] a
hearing."[3]  Casas-Castrillon, 535 F.3d at 951.  During such a
hearing, "an alien is entitled to release on bond unless the
*government establishes* that he is a flight risk or will be a
danger to the community." Id. (emphasis added).

        Both sides agree that the May 14 hearing was *not* a
Casas hearing, but was instead a bond determination procedure
that the government regularly undertakes with respect to aliens
detained pursuant to § 1226(a).  The Casas line of cases is based

_____

        [3] The alien in Casas was being held pursuant to the
provision in § 1226(c) for the mandatory detention of criminal
aliens.  The court in Casas held that "Section 1226(c)'s
mandatory detention provisions apply only until the BIA affirms a
removal order, at which point the government's authority to
detain the alien shifts to § 1226(a)."  Rodriguez v. Robbins, 715
F.3d 1127, 1135 (9th Cir. 2013) (citing Casas-Castrillon, 535
F.3d at 948).  Detention under § 1226(a) is discretionary.  With
the detention of the alien in Casas shifted to § 1226(a), the
Ninth Circuit held that the government had to afford the alien
subject to prolonged detention a bond hearing at which the burden
of proving the need to detain lay with the government.  Unlike
the alien in Casas, Manzanarez has *always* been subject to
§ 1226(a), because he is not a "criminal alien."

7

on challenges under § 1226(c) to the detention of "criminal aliens," for whom detention is mandatory.

The petitioner in <u>Casas</u> had been detained without a hearing for almost seven years. <u>Casas-Castrillon</u>, 535 F.3d at 944. The court in <u>Casas</u> was careful to distinguish between aliens held indefinitely pursuant to § 1226(c), who were without "an opportunity to contest the facts on which the ICE officials based their decision," and aliens subject to "the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA." <u>Id.</u> at 951-52. The Ninth Circuit appeared to recognize that, for a "non-criminal" alien held pursuant to § 1226(a), there is an established administrative structure that regularly affords a detainee a bond hearing upon submission of a motion by the alien or counsel. <u>See generally</u> 8 C.F.R. § 1003.19. However, at such a bond hearing, unlike at a <u>Casas</u> hearing, the burden is on the alien to show by clear and convincing evidence that he or she is not dangerous. 8 C.F.R. § 1003.19(h)(3).[4]

---

[4]   The government also points to 8 C.F.R. § 1236.1(c) for the proposition that aliens bear the burden of proof in discretionary bond hearings. However, this provision applies only to "criminal aliens" subject to the Transition Period Custody Rules (TPCR). During the transitional two-year period of IIRIRA's original implementation, the provision applied to such aliens detained under § 1226(c). The TPCR expired in October 1998, rendering this regulation without effect. <u>See generally</u> <u>Matter of Garcia Arreola</u>, 25 I. & N. Dec. 267 (BIA 2010). In any

To determine who had the burden of proof at Manzanarez's May 14 hearing, this court must therefore decide whether the proceeding was a <u>Casas</u> hearing or an "ordinary bond hearing." The May 14 hearing was a <u>Casas</u> hearing only if *either* the proceeding occurred after Manzanarez was detained for a "prolonged" period of time *or* if the government purported to be giving the alien a <u>Casas</u> hearing, and therefore intended to preclude a future hearing at which it would bear the burden of proof. Neither condition is present here.

<u>Casas</u>, by its terms, applies only to cases of prolonged detention. <u>Casas-Castrillon</u>, 535 F.3d at 944 (holding that "prolonged detention must be accompanied by appropriate procedural safeguards").[5] The Ninth Circuit has held that, "as a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." <u>Diouf v. Napolitano</u>, 634 F.3d 1081, 1092 (9th Cir.

_____

event, Manzanarez is not a "criminal alien" within the meaning of this regulation because he is being detained pursuant to § 1226(a), not § 1226(c).

[5] The notion that all detention, however short and whatever the basis of detention, necessitates a hearing before an IJ is squarely foreclosed by the Supreme Court's holding in <u>Demore</u>. In <u>Demore</u>, the petitioner had been detained for six months as a "criminal alien" pursuant to § 1226(c). The Court held that he could "be detained [without bond] for th[is] brief period necessary for [his] removal proceedings." <u>Demore</u>, 538 U.S. 510 at 513.

2011).  The hearing occurred after Manzanarez had been detained for about one month and so was not, absent more, a Casas hearing.

It is certainly possible to hold a Casas hearing before six months of detention have elapsed.  Indeed, the Ninth Circuit has noted that "DHS should be encouraged to afford an alien a hearing before an immigration judge before the 180-day threshold has been reached if it is practical to do so and it has already become clear that the alien is facing prolonged detention." Diouf, 634 F.3d at 1092.  If the government had argued that the pre-six-month hearing was a Casas hearing (thereby possibly barring future Casas hearings even after six months) this court could hold the government to its Casas burden.  However, both sides agree that the May 14 hearing was not a Casas hearing.

Because the May 14 hearing was neither after a period of prolonged detention nor perceived to be a Casas hearing by either the government or Manzanarez himself, this court views that hearing as a simple bond determination hearing at which the government did not have the burden of proving dangerousness.

Even if the government must comport with basic principles of due process when such hearings occur, the placement of the burden of proof on the alien does not, without more, render such hearings constitutionally defective.  See Demore, 538 U.S. at 525 (noting that detention of short duration without "individualized findings of likely future dangerousness" is

10

permissible under the Fifth Amendment's Due Process Clause)
(citation omitted).

It may not be the most administratively efficient
course to hold two detention hearings, one at which the alien
bears the burden of proof, and one later at which the government
bears the burden of proof.  However, this court recognizes that
the need for a second hearing may be neither so frequent nor so
initially obvious that the government considers it beneficial to
conduct Casas hearings from the start as a matter of routine.  In
any event, the two-hearing procedure does not constitute a
constitutional or legal error.  Manzanarez's "ordinary bond
hearing" was not constitutionally defective.  The IJ and BIA did
not err in placing the burden on Manzanarez to demonstrate that
he was not a danger to the community.  Identifying no
constitutional or legal error in the administrative bond
determinations, this court denies habeas relief.

IV.          **MANZANAREZ'S CURRENT ENTITLEMENT TO A <u>CASAS</u> HEARING**

During the hearing on his petition before this court,
Manzanarez contended that he is *now* entitled to a Casas hearing
because he has been detained for six months, and his detention
has therefore become "prolonged."  The government argues that
detention only becomes "prolonged" when the alien has "completed
administrative proceedings challenging his removal, and [has]
filed a petition for review with the Ninth Circuit."  ECF No. 12

at 2.  The court need not decide when the six months begins to run, although the court notes that the government identified no authority for its proposed start date.  The court further notes that in <u>Rodriguez v. Robbins</u>, 715 F.3d 1127 (9th Cir. 2013), the court said:

> "Regardless of the stage of the proceedings, the same important interest is at stake--freedom from prolonged detention.  Indeed, if anything, because [those] detained prior to the entry of an administratively final removal order have not been adjudicated removable, they would seem to have a greater liberty interest than individuals detained pending judicial review . . . and thus a greater entitlement to a bond hearing."

<u>Id.</u> at 1139.

However, this issue is not properly before this court because Manzanarez appears not to have even requested an administrative <u>Casas</u> hearing.  This court declines to instruct the agency to give Manzanarez relief that he has not yet requested.  The proper course is for Manzanarez to file a motion with the agency for a <u>Casas</u> hearing.  The agency's regulations state that "[a]fter an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."  8 C.F.R. § 1003.19(e).  The court leaves it to Manzanarez to decide whether to cite his prolonged detention as a changed circumstance falling under § 1003.19(e).

12

At the oral hearing, Manzanarez expressed concern that the IJ would be without jurisdiction to act, because Manzanarez has already filed an appeal of his initial bond determination to the BIA.  Manzanarez even asked this court to itself conduct a <u>Casas</u> hearing.  However, the filing of an appeal with the BIA does not divest the IJ of jurisdiction to entertain subsequent bond redetermination requests involving the same alien.  <u>See Matter of Valles</u>, 21 I. & N. Dec. 769, 771-72 (BIA 1997).

To the extent action by this court is warranted, Manzanarez is free to file another habeas petition in this court. <u>Singh</u>, 638 F.3d at 1203 ("On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement.").  But this court will not insert itself into this matter when Manzanarez has not even asked the agency for the relief he seeks.  A habeas petition should not short-circuit an agency's clearly defined procedures.

**V.     CONCLUSION**

The petition for writ of habeas corpus is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 11, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge